**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0065n.06
Filed: January 24, 2006

**No. 05-5475**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,               )
                                        )
    Plaintiff-Appellee,                )
                                        )
v.                                      )    ON APPEAL FROM THE UNITED
                                        )    STATES DISTRICT COURT FOR
                                        )    THE WESTERN DISTRICT OF
ANTHONY VASSER,                         )    TENNESSEE
                                        )
    Defendant-Appellant.               )

---

Before: SILER and GRIFFIN, Circuit Judges; TARNOW, District Judge.[*]

**SILER**, Circuit Judge. Defendant Anthony Vasser appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) on several grounds. We **AFFIRM**.

**BACKGROUND**

In 2002, police officers executed a search warrant at Vasser's residence and discovered three firearms in a locked bedroom closet. One pistol was found on the closet shelf; two other pistols were each found inside a woman's purse. Vasser admitted the purses were his. Elsewhere in the bedroom, officers located ammunition of the same caliber as one of the pistols. Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent Alan Oxley testified that he had examined the

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

three firearms in question and determined that they were manufactured outside Tennessee and that they necessarily moved in interstate commerce to be in Tennessee.

At trial, Vasser admitted that the bedroom and the closet in which the guns were found were his and that he possessed the combination to the lock on the closet door. However, Vasser's sister testified that most of the items in the closet were hers, including the purses and the guns. Three other defense witnesses testified that Vasser neither owned nor carried a gun or a purse.

During deliberations, the jury submitted the following question to the court: "Which gun was on the shelf?" During the courtroom discussion of the jury's question, the government's attorney advised that the gun in question was exhibit eight. The district court ordered a transcript of the officer's testimony that described the location of the guns to be delivered to the jury when completed. The jury later advised the court that it no longer needed the transcript. Subsequently the jury reached a guilty verdict on count one of Vasser's indictment.

After the jury was excused, a court security officer approached counsel for the government and stated that "[m]y fingers work fine" while simultaneously extending downward all of the fingers on one hand and three on the other hand. Government counsel interpreted this signal as a reference to exhibit eight, which was the gun on the closet shelf and the subject of discussion between the court and counsel regarding the jury's question. The government's attorney conveyed the court officer's comment to defense counsel and the court. The court allowed defense counsel to contact the jury and question them concerning the court officer's conduct.

At the motion for a new trial and sentencing hearing, the court officer in question refused to testify, asserting his Fifth Amendment privilege against self-incrimination. Defense counsel

called no jurors to testify. The district court concluded that although the court officer did try to relay information to the jury, the defendant failed to show that he was prejudiced, and the transcript being prepared would have provided the same information that court officer Smith implied he had communicated to the jury. The district court thus denied Vasser's motion for a new trial.

## DISCUSSION

### 1.  Evidence Sufficient to Support a Guilty Verdict

First, Vasser argues that the government's evidence was insufficient to support a guilty verdict. He complains that the guilty verdict was returned "only after an illegal communication of an unknown nature to the jury" and that he presented evidence from four witnesses who testified that he neither owned nor handled a gun. However, ample evidence was presented to support the jury's verdict of guilty. The testimony of defense witnesses to the contrary is not dispositive. The totality of the evidence is adequate to permit a reasonable jury to find the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

### 2.  Expert Testimony of Alan Oxley

Second, Vasser argues that the government failed to establish Oxley's expertise in the interstate nexus of firearms. Further, Vasser contends that no attempt was made to demonstrate how Oxley "arrived at his determination of interstate transfer or what source of information he used." Vasser argues, without so stating, that Oxley was not properly qualified as an expert.[1]

---

[1]Vasser's sole objection to the admissibility of Oxley's testimony at trial was based on his counsel's opinion that "recent problems with . . . ATF [made it] quite obvious that the in-house training [was] insufficient."

Under 18 U.S.C. § 922(g), the government must prove beyond a reasonable doubt that the defendant possessed or received a firearm which has been transported in interstate commerce. Consequently, the interstate nexus element was met if the government demonstrated that Vasser possessed the firearm in a state other than the one in which it was manufactured. The government proved the interstate nexus element of the crime through Oxley's expert testimony. *See United States v. Glover*, 265 F.3d 337, 344-45 (6th Cir. 2001).

We review the issue of expert testimony admissibility for an abuse of discretion. *United States v. Tocco*, 200 F.3d 401, 418 (6th Cir. 2000). We repeatedly have found law enforcement officers' expert testimony admissible where it will aid the jury's understanding of a concept, such as the interstate nexus requirement of Section 922(g), "not within the experience of the average juror." *United States v. Thomas*, 74 F.3d 676, 683 (6th Cir. 1996). Thus a *properly qualified* expert may testify that, in his opinion, a firearm was manufactured outside the state where it was found, "when an essential element of the crime was movement of the [firearm] in interstate commerce." *Glover*, 265 F.3d at 345.

Oxley was properly qualified to testify as to the location of the firearms' manufacture and therefore as to his opinion whether the firearms had traveled in interstate commerce. He had over fifteen years of law enforcement experience and had been employed by ATF for nearly six years. He demonstrated specialized training in the area of interstate nexus identification and had testified as an interstate nexus expert in federal court over sixty times. Accordingly, the district court did not abuse its discretion in ruling that Oxley was qualified to testify by "knowledge, skill, experience, training, or education," that his testimony concerned technical or other specialized knowledge, and

that his testimony would assist the jury in understanding the evidence or in determining a fact in issue. FED. R. EVID. 702.

### 3. Section 922(g)'s "in or affecting commerce" Requirement

Third, Vasser argues that the district court erred in denying his motion for judgment of acquittal or for dismissal because the government did not "properly establish its jurisdiction under the Interstate Commerce Clause." Citing *United States v. Lopez*, 514 U.S. 549 (1995), Vasser characterizes the government's burden in a Section 922(g) case as one requiring proof that defendant's activity (1) utilized the channels of interstate commerce, (2) utilized the instrumentalities of interstate commerce, or (3) has a "substantial relation" to interstate commerce. *See Lopez*, 514 U.S. at 558-59. However, this contention runs counter to precedent that Section 922(g)(1) represents a valid exercise of Congress's legislative power under the Commerce Clause. *See, e.g., Scarborough v. United States*, 431 U.S. 563 (1977)*; United States v. Loney*, 331 F.3d 516, 524 (6th Cir. 2003).

### 4. Vasser's Requested Jury Instruction Regarding the Elements of Section 922(g)

The sum total of Vasser's "legal" argument on this issue is as follows: "Defense counsel submitted to the trial court a request for jury instruction. The written instruction stated that the firearm 'affected' interstate commerce, not merely was 'transported' in interstate commerce. This instruction properly presented the elements of this offense." Because the issue of the requested jury instruction is unaccompanied by any effort at developed argumentation whatsoever, it is waived. *See United States v. Sandridge*, 385 F.3d 1032, 1035 (6th Cir. 2004).

## 5.  Failure to Demonstrate Prejudice Resulted from Communication between Court Officer

## and Jury

Vasser's final assignment of error concerns the communication made to the jury by a court security officer during jury deliberations.  The district court denied Vasser's motion for a new trial based on the extraneous information provided to the jury.  This court reviews a district court's denial of a motion for a new trial for an abuse of discretion.  *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995).  The burden of showing juror bias rests with the defendant and not the government. *United States v. Pennell,* 737 F.2d 521, 532 (6th Cir. 1984) (proclaiming that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias" (internal citations and quotations omitted)).

Upon Vasser's motion, the district court properly allowed defense counsel to contact the jurors and question them concerning the court officer's conduct. However, the district court found that although the court officer did attempt to relay information to the jury, Vasser failed to demonstrate that any prejudice resulted from the action; additionally, it found that the jury would have received the same purported information from the transcript that was to be prepared and presented to the jury.

**AFFIRMED**.